UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| TABERT NAPIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 14-171-GFVT |
| V. | ) | |
| | ) | |
| CINCINNATI INSURANCE | ) | **MEMORANDUM OPINION AND** |
| COMPANY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*** *** *** ***

Before the Court is Defendant Cincinnati Insurance Company's Motion for Partial
Summary Judgment. [R. 13] Cincinnati seeks summary judgment with respect to three
of Plaintiff Tabert Napier's claims, and Napier offers no objection to granting summary
judgment for the Defendant with regard to two of these claims. The remaining issue in
dispute concerns Napier's alleged damages resulting from the permanent impairment of
his future earning capacity. The Court concludes that Napier has provided no factual
proof or expert testimony to support this claim. Thus, for the reasons stated below,
Defendant's motion is GRANTED.

**I.**

On May 4, 2013, Donna M. Keen[1] struck Plaintiff Tabert Napier's vehicle after
allegedly crossing into Napier's lane of travel. In his First Amended Complaint, Napier

---

[1] Napier's claims against Ms. Keen were dismissed with prejudice before the parties removed this case to
federal court. [R. 1-2] The only defendant in the instant case is Cincinnati Insurance Company.

sought numerous damages arising from the car accident, including (1) past and future medical expenses and (2) compensation for permanent impairment of his future earning power.  [R. 1-1 at 8-9]  In addition, Napier sought punitive damages in connection with his claim that Cincinnati acted in bad faith when it failed to compensate him for his injuries.  On February 25, 2015, this Court bifurcated Napier's bad faith action—including his claim for punitive damages—from the underlying action for damages resulting from the accident.  [R. 8]  Further, in his subsequent interrogatory responses, Napier indicated that he would no longer seek damages for past or future medical expenses.  [R. 13-2 at 2]

On July 15, 2015, Cincinnati filed the instant Motion for Partial Summary Judgment.  [R. 13-1]  Cincinnati argues that (1) Napier has waived all claims for past and future medical expenses, (2) punitive damages are not available in the present action, given that Napier only seeks those damages in connection with his bifurcated bad faith claim, and (3) Napier has failed to raise a genuine issue of material fact regarding the permanent impairment of his future earning capacity.  [R. 13-1]

In his original Response to Defendant's Motion for Partial Summary Judgment, Napier agreed that (1) he had waived all claims for past and future medical expenses and (2) punitive damages were not recoverable in the present case.  [R. 14 at 2]  Pursuant to LR 7.1(c), the deadline to file a response to Cincinnati's Motion for Partial Summary Judgment expired on August 5, 2015.  Nevertheless, Napier filed an Amended Response to Defendant's Motion for Partial Summary Judgment on August 11, 2015.  This new motion expressed a "change of heart in pursuing recovery for past and future medical

expenses," and attached a revised answer to Defendant's previous interrogatories in which he attempted to reassert both claims.  [R. 19 at 3]  An accompanying Motion for Leave to Supplement Disclosure of Expert Witnesses also sought permission to introduce the expert testimony of Napier's treating physician, which he deemed "essential" to his claim "of impairment of his ability to earn money in the future."  [R. 15 at 7]

On August 27, 2015, the magistrate judge denied Napier's request to supplement his expert witness disclosures, finding that Napier had not shown "his failure to timely disclose his expert witness was the result of 'excusable neglect.'"  [R. 25]  Napier has filed no objection to the magistrate's order, and the deadline to do so has long passed. Consequently, this Court will not consider the statements made by Napier's proposed expert when measuring the force of his claims.  Additionally, concurrent with the filing of this Order, the Court has denied Napier's request for leave to amend his response to Cincinnati's Motion for Partial Summary Judgment.  As a result, only Napier's original response—in which he waived all claims for past and future medical expenses—will remain a part of the record.  In light of the preceding orders, the only remaining issue ripe for review is Napier's claim regarding the permanent impairment of his future earning capacity.

## II.

## A.

Pursuant to FRCP 56(c), summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

of law."   A genuine dispute exists when the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Put differently, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact.  *Chao v. Hall Holding*, 285 F.3d 415, 424 (6th Cir. 2002).  Moreover, the movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Holding Hall*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324).  The non-moving party, however, "must do more than show there is some metaphysical doubt as to the material fact.  It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Holding Hall*, 285 F.3d at 424 (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).  In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."

4

*Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

**B.**

Under Kentucky law, a plaintiff seeking damages for permanent impairment of future earning power must "show with reasonable probability that the injury sustained is permanent." *Reece v. Nationwide Mut. Ins. Co.*, 217 S.W.3d 226, 230 (Ky. 2007). While "a permanent injury may not always result in permanent impairment of earning power," members of the jury "are capable of determining, from the evidence and their common knowledge and experience, whether there has been a permanent impairment, the extent of such impairment, and the value of such impairment." *Id.* at 230-31. Further, although "specific expert witness testimony on permanent impairment of earning power is helpful and often persuasive, it is not necessary to submit the issue of permanent impairment of earning power to the jury." *Id.* at 230 (internal citations omitted). Instead, the plaintiff need only show a "reasonable probability" that the injury is permanent. *Id.*

Cincinnati contends that Napier has failed to raise a genuine issue of material fact regarding the permanence of his injuries. The Defendant argues that Napier "has presented no factual or expert proof to support this claim," and that his "testimony established that his injuries do not, and will not, prevent him from performing his job duties." [R. 13-1 at 4] Cincinnati cites Napier's deposition testimony from April 14, 2015, in which he states that he has "[n]ever" been reprimanded for poor performance and that he believes he is "able to adequately perform" his duties. [R. 13-3 at 5] When defense counsel asked Napier "to explain the basis for his claim that his ability to earn

5

money has been impaired by this accident," he indicated his injuries had initially prevented him from completing an 18-week program that entitled him to a "significant pay raise." [*Id.* at 3]. Upon further questioning, however, Napier admitted that he had completed the program later that same year. [*Id.* at 3-4]

For his part, Napier provides three independent bases for denying Cincinnati's motion. First, he quotes extensively from the commentary provided in medical reports prepared by his treating physician, Dr. Robert Hoskins. [R. 14 at 3-4] Although these statements, if admissible, would undoubtedly support Napier's claim, Dr. Hoskins was never identified in Napier's expert disclosures. Napier did not attempt to supplement his expert disclosures until five months after the close of discovery. As previously stated, the magistrate judge has already denied Napier's request to supplement these disclosures. Thus, Dr. Hoskins's hypothetical testimony as an expert witness will not factor into this Court's evaluation.

Second, Napier argues that, even if Dr. Hoskins's expert testimony is inadmissible, he may nevertheless testify as a "fact witness" at trial. [*Id.* at 3,5] Napier further cites *McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 927 (E.D. Ky. 2014), to support this proposition. In *McFerrin*, the court noted that a fact witness may testify as to "the course of treatment and to what he directly observed while [the patient] was under his care." *Id.* at 927. Napier apparently argues that, in his role as a fact witness, Dr. Hoskins may therefore speak to any direct observations he made during the course of treatment that concern Napier's "impairment and the permanence of his injuries." [R. 14 at 7]

Napier's claim overlooks the substantial limitations placed on the testimony of fact witnesses.  As *McFerrin* itself cautioned, if a "treating physician testifies 'beyond the scope' of the treatment rendered and gives opinion testimony based on his 'scientific, technical, or otherwise specialized knowledge,' then the treating physician is still testifying as an expert witness."  *Id.* at 933 (internal citation omitted); *see also Musser v. Gentiva Health Servs.,* 356 F.3d 751, 757 (7th Cir. 2004) (holding that "a treating doctor…is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation") (internal citation omitted).

Dr. Hoskins cannot offer an opinion relating to the cause or permanence of Napier's injury without drawing from his specialized knowledge as a medical professional.  To label a witness providing such testimony a "fact witness" would erase the distinction between fact and expert witnesses.  This erasure, in turn, would stand in tension with Rule 26(a)(2), which aims to provide parties with sufficient notice of adverse expert testimony.  Thus, although Dr. Hoskins may testify at trial regarding his direct observations of Napier during the course of treatment, he may not enlist those observations in the service of broader speculation regarding the permanence of Napier's injuries.

Lastly, Napier argues that evidence already contained in the record—most notably, his own deposition testimony—is sufficient to support his claim of permanent injury.  He points to his own statements describing neck pain, headaches, problems with

his right knee, and aggravated pain in his right elbow, right shoulder, and lower back.  [R. 14 at 5-6]  Further, he cites testimony indicating that he temporarily "had to stop doing anything that involved any kind of physical activity" following the accident, and that he "had to take time off" from his job because he was "in pain."  [*Id.* at 6]  Similarly, Napier also testified that, in the course of performing his duties, "there's quite a bit of the times when I am met with resistance and my elbow hurts, my shoulder hurts, and my back bothers me to some extent."  [*Id.* at 4]

These statements, without more, are insufficient to defeat Cincinnati's motion. To begin with, Napier offers no admissible expert testimony regarding the permanence of his injuries.  As previously stated, the Kentucky Supreme Court in *Reece* held that "specific expert witness testimony on permanent impairment *of earning power*," while helpful, is not "necessary to submit the issue of permanent impairment of earning power to the jury."  *Reece*, 217 S.W.3d at 230 (emphasis added).  *Reece* did not hold, however, that a claim can survive summary judgment in the absence of any expert testimony regarding the *permanence of the injury*.  In fact, the court in *Reece* expressly relied on the expert testimony of two treating physicians before concluding that the plaintiff had demonstrated a "reasonable probability" of permanent injury.  *See id.* at 231.  Moreover, even assuming that lay testimony regarding the permanence of a plaintiff's injury is alone sufficient to survive a motion for summary judgment, Napier has provided no such testimony.  While the statements in his deposition certainly support the proposition that he suffered an injury, they altogether fail to address the issue of whether those injuries will prove to be permanent.

8

For the foregoing reasons, this Court concludes that Napier has failed to raise a genuine issue of material fact regarding the permanent impairment of his future earning capacity.  Further, Napier concedes that (1) he has waived all claims for past and future medical expenses and (2) punitive damages are not recoverable in the present case, given that he only seeks those damages in connection with his bifurcated bad faith claim.

Accordingly, having considered the record and being otherwise sufficiently advised, the Court **HEREBY ORDERS** that Defendant Cincinnati Insurance Company's Motion for Partial Summary Judgment [**R. 13**] be **GRANTED** with respect to the three claims specified herein.  Plaintiff Tabert Napier preserves all other claims.

This 27th day of October, 2015



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

9